

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable James E. Kilday
Director
Motor Transportation Division
Railroad Commission of Texas
Austin, Texas

Dear Sir:

Opinion No. 0-1096
Re: Whether two certificates
of convenience and necessity
traversing same route become
merged upon common ownership,
and whether a certificate
may be severed horizontally
and a part thereof assigned
and conveyed.

In connection with your letter of July 6, 1939,
you submit to us the following facts:

W. A. Johnson owns two certificates of conven-
ience and necessity authorizing operation as a common car-
rier motor carrier; (1) No. 2225 from Dallas through Fort
Worth to San Angelo via Abilene, and (2) No. 2023 from Dal-
las to Fort Worth, Brownwood, DeLeon, Rising Star, and back
to DeLeon. He obtained such certificates by purchase from
other parties who had acquired the same under the terms of
the grandfather clause of the Motor Carrier Act. Neither
certificate, nor any portion of either, has ever been re-
voked, modified or altered by the Railroad Commission.
Since his acquisition of the two lines, apparently there
has been no separate operation of the two certificates, as
between Fort Worth and Dallas, but Johnson's trucks have
been authorized to operate under both certificates.

Johnson has made application to sever Certificate
No. 2023 at Fort Worth, and to sell and assign to South-
western Transportation Company all that part of such cer-
tificate authorizing operation between Dallas and Fort Worth.
He proposes to continue serving Dallas and Fort Worth and
intermediate points under Certificate No. 2225. We are ad-
vised that Southwestern Transportation Company holds cer-

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

tificates to operate out of Dallas in an easterly direction, but at the present time has no authority to operate between Dallas and Fort Worth.

The application to so sell and assign such part of Certificate No. 2023 complies with Section 5 of Article 911b, Revised Civil Statutes, relating to the sale and assignment of certificates of convenience and necessity, but it goes no further. Specifically, it does not meet the requirements of Section 10 of Article 911b, which sets forth the facts which an application for a certificate of convenience and necessity must contain. Two arguments are advanced by contestants in support of their contention that the Commission cannot legally authorize the assignment: (1) That when both certificates came into the hands of a common owner they became merged or consolidated over the route commonly traversed by them, to-wit: Dallas to Fort Worth; and (2) under the statute, a certificate cannot be broken into pieces and a part only of a route sold and assigned.

You request our opinion in response to the following two questions:

"(1) When Johnson became the owner of both certificates 2023 and 2225, did there come about a merger of the rights thereunder, as far as the line between Dallas and Fort Worth are concerned, of such nature as to preclude his later sale of his rights under one of these so far as the distance between Ft. Worth and Dallas is concerned?

"(2) Under all of the facts presented by the enclosures, does the Commission have the discretionary power, upon proof of proper statutory facts to approve this particular transfer and sale, taking into consideration, along with other facts, the previous opinion of the Attorney General referred to by Christopher?"

In the case of Railroad Commission vs. Red Arrow Freight Lines, 96 S.W. (2d) 755, before the Austin Court of Civil Appeals, the facts involved were, briefly, these:

H. H. Lawler became the owner of two certificates of convenience and necessity, one to operate from Houston

to San Antonio and intermediate points, and the other from San Antonio to the Valley via Edinburg, and intermediate points. He filed an application before the Railroad Commission for a so-called re-routing to permit him to go directly from Houston to Edinburg, without serving intermediate points on that route. Without requiring him to show the necessity of this through service, on the theory that he already had authority to serve shipments from Houston to Edinburg and thenceforth into the Valley, and vice versa, the Commission entered an order granting such re-routing. The trial court entered a judgment annulling such order, and the Railroad Commission appealed. We quote from the opinion of Judge McClendon, as follows:

"The two certificates were granted at different times to different individuals. They were granted to serve separate and distinct transportation requirements: The one served the territory from Houston to San Antonio and intermediate points; the other, that from San Antonio to the Valley and intermediate points. In considering the question of convenience and necessity as to each certificate, only the needs, requirements, etc., of the two termini and intermediate points were involved. Neither certificate had any relation to the other. The fact that common ownership was finally united in Lawler in no way modified their effect. They were manifestly not designed originally, nor through common ownership thereafter, to provide a direct through service between Houston and Valley points."

So it is in the case before us. Certificates Nos. 2225 and 2023 were granted for the purpose of meeting separate and distinct transportation requirements. No. 2225 was granted for the purpose of meeting the need of the public for a service from Dallas through Fort Worth to San Angelo via Abilene, while No. 2023 was granted to meet the needs of the public for a service from Dallas to Fort Worth, Brownwood, DeLeon, Rising Star, and back to DeLeon. The nature of the certificates granted was not affected by the fact that subsequently to the time they were granted they became owned by one person. One person owning both certificates could render both services the same as if the certificates were differently owned. Subsection (b) of

Section 12, Article 911b, reads as follows:

"The Commission at any time after
hearing had, upon notice to the holder
of any certificate or permit and after
opportunity given such holder to be
heard, may by its order revoke, suspend
or amend any certificate or permit is-
sued under the provisions of this Act,
where in such hearing the Commission
shall find that such certificate or per-
mit holder has discontinued operation or
has violated, refused or neglected to
observe the Commission's lawful orders,
rules, rates or regulations or has vio-
lated the terms of said certificate or
permit; provided that the holder of such
certificate or permit shall have the
right of appeal as provided in this Act."

The fact that the Railroad Commission has never
proceeded to revoke or amend either of these certificates,
under the authority above provided, we think is sufficient
evidence of the fact that the present owner of the certifi-
cates has maintained the services required under each of
those certificates. The facts submitted to us do not show
as a matter of law that the certificates have become merged
or consolidated over the route from Dallas to Fort Worth.

The question with which we are now confronted is
whether Certificate No. 2023 can be severed at Fort Worth
and the route, or authority to operate from Fort Worth to
Dallas, sold and assigned. Section 5 of Article 911b
reads, in part, as follows:

"Any certificate held, owned or
obtained by any motor carrier operating
as a common carrier under the provisions
of this Act may be sold, assigned,
leased, transferred or inherited; pro-
vided, however, that any proposed sale,
lease, assignment or transfer shall be
first presented in writing to the Commis-
sion for its approval or disapproval and
the Commission may disapprove such pro-
posed sale, assignment, lease or trans-
fer if it be found and determined by the
Commission that such proposed sale, as-
signment, lease or transfer is not in

good faith or that the proposed pur-
chaser, assignee, lessee or transferee
is not able or capable of continuing
the operation of the equipment proposed
to be sold, assigned, leased or trans-
ferred in such manner as to render the
services demanded by the public neces-
sity and convenience on and along the
designated route, or that said proposed
sale, assignment, lease or transfer is
not best for the public interest;  the
Commission in approving or disapproving
any sale, assignment, lease or transfer
of any certificate may take into con-
sideration all of the requirements and
qualifications of a regular applicant
required in this Act, and apply same as
necessary qualifications of any proposed
purchaser, assignee, lessee or trans-
feree; . . ."

Ordinarily, of course, the greater includes the
lesser, and authority to convey the whole would constitute
authority to convey any part thereof. We have not over-
looked the fact that the services contemplated in the grant-
ing of Certificate No. 2023 included not only services from
Dallas to Fort Worth, and from Fort Worth to the next city,
and thence to the next, but it also probably included a di-
rect service between Dallas and DeLeon, and  Dallas and oth-
er stations on the route. We have reached the conclusion,
however, that sale of a part can be made, although an inter-
change service may be substituted for a direct one. Suffi-
cient protection is given to the public in this regard by
that part of Section 5 of Article 911b giving the Commission
authority to disapprove any proposed sale or assignment, if
it be found and determined by the Commission that same is
not best for the public interest.

Since Southwestern Transportation Company already
holds certificates of convenience and necessity authorizing
operations from Dallas into East Texas, the possibility is
presented that if this transfer is consummated the South-
western Transportation Company may tie its certificates to-
gether at Dallas and create a through service from Fort
Worth into East Texas, without having pleaded and proven
the necessity of such through service. Similar situations
may be presented upon the sale or assignment of a certifi-
cate in whole. The fact that Southwestern Transportation
Company already owns certificates authorizing the operation
of a common carrier service eastward from Dallas should not

necessarily remove Southwestern Transportation Company from the list of eligible purchasers of the certificate from Johnson Motor Lines. Nor should the right of Johnson Motor Lines to sell the certificate necessarily be curtailed by a removal from the eligible list of all persons holding certificates authorizing operation out of Dallas. We again refer to Section 5 of Article 911b, and express the opinion that the public is given sufficient protection in the powers therein conferred upon the Commission with reference to the approval or disapproval of proposed sales and assignments. As respects competing carriers, it may be that the kind of service which Southwestern Transportation Company ultimately inaugurates from Fort Worth into East Texas may present a question with which we are not now concerned.

We understand that on a number of occasions heretofore certificates have been severed horizontally, and parts thereof sold and assigned under orders of the Railroad Commission. We also understand that on a few occasions parallel certificates which became owned by a single person were permitted to be severed, one from the other, and one of them sold and conveyed in such a way that they were thereafter operated by different carriers. The practical construction thus placed upon the statute with respect to these matters by the Railroad Commission is entitled to consideration.

In the case of Thompson vs. Foster, 105 S.W. (2) 343, a lessee applied for approval of certain contracts between him and Painter Bus Lines, Inc., for the operation of a round trip daily motor bus schedule from San Antonio to Del Rio under a certificate owned by Painter Bus Lines, Inc. Painter Bus Lines' certificate authorized several bus operations between several cities and towns, including one round trip daily operation from San Antonio to Del Rio. Painter Bus Lines entered into a contract with Foster for the right or privilege of operating the schedule from San Antonio to Del Rio, as authorized by the certificate under the supervision and regulation of the Railroad Commission. For the right or privilege of operating such schedule, Foster was to pay Painter Bus Lines the sum of $25.00 per month, and a certain percentage of local fares for tickets sold by him. The contract was for a period of ten years. The Commission refused to approve the contracts, and threatened to arrest Foster for operating the schedules without written approval of the contract. Foster obtained a temporary injunction, and the trial court overruled a motion to dissolve the temporary

injunction. We quote from the court's opinion, as follows:

"Nor do we sustain the second proposition that the law does not authorize a lease or a contract for the operation of a motorbus schedule by the owner of the certificate of convenience and necessity. Such a lease or contract is not a transfer, lease, or an assignment of a part of the certificate, but is merely a lease or contract of a right or privilege under the certificate, which certificate still remains the property of the owner. The lease or contract for the operation of a bus schedule under a certificate is authorized by the portion of section 5 of Article 911a, Vernon's Ann. Civ. St., which reads as follows: 'Any right, privilege, permit, or certificate held, owned or obtained by any motorbus company under the provisions of this Act (Art. 911a; P.C. art. 1690a) may be sold, assigned, leased or transferred, or inherited; provided, however, that any proposed sale, assignment, lease or transfer shall be first presented in writing to the Commission for its approval or disapproval and the Commission may disapprove such proposed sale, assignment, lease, or transfer if it be found and determined by the Commission that such proposed sale, assignment, lease or transfer is not made in good faith or that the proposed purchaser, assignee, lessee or transferee is not able or capable of continuing the operation of the equipment proposed to be sold, assigned, leased or transferred, in such manner as to render the service demanded by the public necessity and convenience on and along the designated route.'"

In the above case it is noted that the court drew a distinction between the facts in that case and the lease of a part of a certificate. However, the contract between Painter Bus Lines and Foster came so close to being an assignment of a part of the certificate for a period

of ten years or a lease thereof that we do not believe a different holding would be warranted upon a sale or lease of a part of a certificate. Your second question is answered in the affirmative.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *Glenn R. Lewis*

Glenn R. Lewis
Assistant

GRL:FG

APPROVED AUG 21, 1939

*Gerald C. Mann*

ATTORNEY GENERAL OF TEXAS



APPROVED
OPINION
COMMITTEE
BY *BWB*
CHAIRMAN